## IN THE COURT OF APPEALS OF IOWA

No. 18-0232
Filed April 4, 2018

IN THE INTEREST OF K.A.,
Minor Child,

B.M., Father,
        Appellant.

_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

A father appeals the juvenile court's termination of his parental rights.

**AFFIRMED.**

Sarah J. Livingston of Thatcher, Tofilon & Livingston, P.L.C., Fort Dodge, for appellant father.

Thomas J. Miller, Attorney General, and John B. McCormally, Assistant Attorney General, for appellee State.

Neven J. Conrad of Baker, Johnsen, Sandblom & Lemmenes, Humboldt, guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

A father appeals a juvenile court order terminating his parental rights to his minor child, K.A., born in December 2014.  He contends the district court erred in finding clear and convincing evidence supported the statutory grounds for termination, concluding termination was in the child's best interests, declining to apply a statutory exception to termination, and failing to grant a six-month extension to achieve reunification.

I.      **Background Facts and Proceedings**

K.A. came to the attention of the Iowa Department of Human Services (DHS) in September 2016 upon allegations that his mother was using methamphetamine while caring for him and would leave him for days at a time with friends and family.  After a positive drug screen for methamphetamine and a founded child-abuse assessment against the mother for denial of critical care for failure to provide proper supervision, K.A. was placed in foster care.  At that time, the child's father was not identified.  On December 15, K.A. was adjudicated to be a child in need of assistance (CINA), and temporary custody was placed with DHS for placement in foster care.  At the time of the termination hearing, other than a two-month trial period with the mother in May and June 2017, K.A. had been removed from parental care for thirteen of the last fifteen months and had been placed with the same foster family during that time.

On March 6, 2017, K.A.'s father was identified through paternity testing. The father's first contact with K.A. occurred on March 8.[1] On April 5, he signed a contract of expectations with DHS and was initially offered three supervised visits per week. Attendance and engagement were inconsistent until July, when regular interactions took place and a more significant visitation plan was developed, which included unsupervised visits. However, beginning in September, the father began cancelling visits, and when he did visit, DHS reported that he was not engaging with K.A. in activities. The visitation plan reverted to supervised visits due to the father's inconsistent visitation as well as his failure to comply with mandated drug testing. He has not visited K.A. since early December, and K.A. has never been placed in his father's care.

During May 2017, the father entered residential treatment. He was asked to leave early due to rule violations after which he transferred to intensive outpatient treatment in June. He completed this treatment program and transferred to an extended outpatient treatment plan. However, he stopped attending and was discharged at the end of August with substantial completion. He admitted to relapsing a week after his discharge. The father was asked to submit to random drug testing with DHS beginning in August but failed to appear on numerous occasions from August 23, 2017 to January 4, 2018.

The father completed a substance-abuse evaluation on November 28, 2017, and extensive outpatient treatment was recommended. Although he

---

[1] We note that in the July 13, 2017 CINA dispositional review order, there appears to be a typo which lists the father's first interaction with K.A. as May 8, 2017. However, the DHS report for that hearing lists the first interaction as March 8, 2017.

attended the admittance appointment on December 1, he did not appear for additional services and was unsuccessfully discharged on January 1, 2018.

The father is homeless and unemployed. He was living with his father and his other child in the family home. The other child is the subject of CINA proceedings and, as such, conditions were placed on the father to allow him to remain in the home. Due to his noncompliance with those expectations, including drug testing, he was asked to leave the home on December 26 and has stayed with friends since that time.

On October 23, 2017 the State petitioned for the termination of both parents' parental rights. On January 25, 2018, the juvenile court terminated both the father's and mother's parental rights to K.A. Only the father appeals.

## II. Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). We will uphold an order terminating parental rights if there is clear and convincing evidence supporting the grounds for termination under Iowa Code section 232.116(1) (2017). *D.W.*, 791 N.W.2d at 706. Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* "We only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm its ruling." *In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2002). Our principle consideration in termination

proceedings is the child's best interests—safety; long-term nurturing; and physical, mental, and emotional conditions and needs. Iowa Code § 232.116(2); *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III.    Analysis**

Termination of parental rights under chapter 232 follows a three-step analysis. *D.W.*, 791 N.W.2d at 706. First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination is established, the court must then apply the best-interests framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* at 706–07. Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights. *Id.* at 707.

A.    Statutory Grounds for Termination

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), and (h). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *Id.* To terminate under section 232.116(1)(h), the State must show by clear and convincing evidence (1) the child is three years of age or younger, (2) the child has been adjudicated a CINA, (3) the child has been removed from the parent's care for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days, and (4) the child cannot be returned to the parent's custody at the time of the termination hearing.

The establishment of the first three elements under (h) is generally undisputed, and the father conceded at trial the child could not be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"); *A.M.*, 843 N.W.2d at 111 (indicating the statutory language "at the present time" refers to the time of the termination hearing). We therefore affirm the juvenile court's termination of the father's parental rights pursuant to Iowa Code section 232.116(1)(h).

B.     Best Interests

The father argues termination is not in K.A.'s best interests, highlighting that K.A. has a full sibling who resides with the paternal grandfather and, until recently, the father had been residing with his father and the other child. He identifies a bond between K.A. and his sibling and argues that termination of parental rights would cut off the legal relationship between the two siblings and would make the possibility of future interactions between the siblings uncertain. He also points out that the DHS social worker acknowledged that there is a bond between K.A. and himself and that positive interactions have occurred between them.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). If the child has been placed in foster care, we consider the

extent to which the child has become integrated into that family. Iowa Code § 232.116(2)(b). For integration, we look at how long the child has been living with the foster family and consider the desirability of continuity for the child. *Id.* § 232.116(2)(b)(1).

We agree with the juvenile court that termination is in K.A.'s best interests based on the father's past conduct, his refusal to put K.A. before his own substance-abuse habits, and his unwillingness to take any affirmative steps to learn to be a parent. The father argues that termination may affect the relationship between K.A. and his sibling. We acknowledge the importance of sibling relationships has been statutorily recognized in section 232.108. *See In re A.J.*, No. 13-0216, 2013 WL 1227360, at *3 (Iowa Ct. App. Mar. 27, 2013). It is not in K.A.'s best interests to be placed with his father, and his father is not currently able to provide a safe, supportive, and structured home, nor is he in a position to be able to do so in the foreseeable future. We must consider each child's needs with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). While we acknowledge that there is a preference to keep siblings together and the termination order would sever the sibling relationship as well as the parental relationship, that preference is not strong enough to outweigh the evidence favoring termination in this case.

The record reflects that K.A. is integrated well into foster care and his foster parents are interested in adopting K.A. K.A. has remained in the same foster family since his removal in October 2016, except for the two months he was returned to his mother for a trial period. K.A. continued to see and have a relationship with the foster family even during the trial period with his mother. We find that termination

of the father's parental rights is in K.A.'s best interests, as it will give him a chance at permanency and stability in his life. *See In re M.W.*, 876 N.W.2d 212, 224–25 (Iowa 2016) (concluding termination was in best interests of the children where they were well-adjusted to home with their caregivers, the caregivers were "able to provide for their physical, emotional, and financial needs," and the caregivers were prepared to adopt the children).

C.     Statutory Exceptions to Termination

"The court need not terminate the relationship between the parent and child if . . . the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of the statutory exceptions to termination is "permissive not mandatory." *M.W.*, 876 N.W.2d at 225. "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011)).

The father argues that termination of parental rights is not in K.A.'s best interests and would be detrimental to K.A. His arguments focus on his own relationship with K.A. and the relationship between K.A. and his sibling. Iowa Code section 232.116(3) does not provide a permissive exception to termination based on the closeness of a relationship between siblings. In considering the bond between K.A. and his father, we note K.A. has never lived with his father and the father has not consistently exercised visitation in some time. There is nothing in the record which reveals that the lack of contact has had any detrimental effect on K.A. Though there may be a bond between them, the father is unable to provide

a safe, stable home for K.A. and is not able to do so in the foreseeable future. Removing K.A. from the placement he has been in for thirteen of the last fifteen months would be detrimental. Stability and permanency are in K.A.'s best interest. We agree with the juvenile court's determination that termination would be in K.A.'s best interests. Upon our de novo review, we decline to apply an exception under section 232.116(3). We therefore affirm the juvenile court's decision to not apply any of the statutory exceptions to termination.

D.    Extension

The father's final argument is that the juvenile court erred in denying his request for additional time to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a CINA, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

Upon our de novo review, we are unable to make a finding that the need for removal would no longer exist after the father's requested extension. Other than his testimony about being a good dad and wanting to quit drugs, the father has failed to take or follow through on any affirmative steps to do so or be a consistent part of K.A.'s life. He continues to use methamphetamine, including a week before the termination hearing, and despite completing a substance-abuse evaluation on November 28, he failed to attend any of the recommended extensive outpatient treatment services other than the initial admittance appointment. He refuses to

comply with drug testing which could allow him to return to his family home, due to the testing not being part of his admitted "routine" of "[s]itting at home, doing nothing."

While a parent must do more than simply go through the motions, we find the father is unwilling to do even that. *See M.W.*, 876 N.W.2d at 224; *see also C.B.*, 611 N.W.2d at 495 (noting that parents cannot wait until the eve of termination to begin to take interest in their children because "[t]ime is the critical element" in parenting situations). His actions and inactions show no indication that this will change any time in the foreseeable future. *See A.B.*, 815 N.W.2d at 778 (noting a parent's past conduct is instructive in determining the parent's future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (stating that when considering what the future holds if a child is returned to the parent, we must look to the parent's past behavior because it may be indicative of the quality of care the parent is capable of providing in the future).

K.A. requires stability and permanency and it would not be in his best interests to delay termination. Therefore we affirm the juvenile court's denial of the requested six-month extension.

## IV.    Conclusion

We conclude that there is clear and convincing evidence to support the termination of parental rights under Iowa Code section 232.116(1)(h). Additionally, we conclude termination is in the child's best interests and the application of statutory exceptions to termination is unwarranted in this case. Finally, we affirm the juvenile court's denial of the father's requested six-month extension. We affirm the termination of the father's parental rights.

**AFFIRMED.**